**HUNT et al. v. TRIMBLE et al.**

No. 5295.

Court of Civil Appeals of Texas. Amarillo.

Nov. 4, 1940.

Rehearing Denied Dec. 9, 1940.

Willis & Via, of Pampa, for appellants.

Sanders & Scott, of Amarillo (A. P. Smith, of Amarillo, of counsel), for appellees.

FOLLEY, Justice.

This is an appeal from a judgment permanently enjoining the County Judge, County Attorney and County Commissioners of Wheeler County, Texas, from entering any orders consolidating two school districts and also declaring void two elections held in connection with the purported consolidation, one upon the issue of consolidation and the other upon the assumption of bonded indebtedness.

The two school districts involved are the Mobeetie Independent School District lying wholly within Wheeler County and the contiguous Mt. View Common County Line School District No. 36 lying partly within Wheeler and partly in Gray County. Since the creation of the county line district Wheeler County has had jurisdiction over it for administrative purposes. The school house of such district has at all times been

located in Wheeler County. The school authorities of Gray County have at all times since the organization of the county line district acquiesced in the management and control of such district by the school authorities of Wheeler County, the former having regularly collected and remitted school taxes due such district to the school authorities of Wheeler County for disbursement. There is a bonded indebtedness outstanding against the Mobeetie Independent School District in the sum of $59,800, but none against the Mt. View Common County Line District.

On March 25, 1940, apparently operating under articles 2742b, 2806 and 2807, Vernon's Annotated Civil Statutes, twenty or more of the legally qualified voters of each of the respective districts above presented a petition to the County Judge of Wheeler County asking that an election be called in each of such districts for the purpose of consolidating the same and for a separate election to be held at the same time on the assumption of outstanding bonds of the proposed consolidated district. On the same date the County Judge of Wheeler County issued orders calling for both elections to be held in the two districts on April 27, 1940. From the record it appears that no action was taken by the County Judge or Commissioners' Court of Gray County nor by the County Board of School Trustees of either of the counties concerned, nor was it shown that their consent to the consolidation was in any manner obtained. After due notice the elections were held on the date scheduled and resulted in a majority vote being cast in each of the districts both in favor of the consolidation and the assumption by the proposed consolidated district of the bonded indebtedness against the Mobeetie Independent School District.

The County Commissioners' Court of Wheeler County met on May 13, 1940, and issued its order declaring the results of the election. Theretofore, however, on May 10, 1940, this suit was filed by five taxpayers residing in the Mt. View district asking for a temporary order restraining the County Judge, County Attorney and County Commissioners of Wheeler County from issuing any orders consolidating the two school districts or any orders with reference to the assumption of the bonded indebtedness. In such petition the validity of the elections was attacked because they were held without the consent and authority of the county

judge and commissioners of Gray County and without the consent and authority of the county board of school trustees of either Gray or Wheeler Counties. A temporary restraining order was issued as prayed for on the same day the suit was filed. At a hearing on May 24, 1940, a temporary injunction was issued restraining the issuance of any orders in connection with the election. On May 29, 1940, the appellants filed a plea in abatement and an original answer wherein, among other things, the authority of the appellees to bring this suit was challenged upon the theory that such elections could be attacked only by a quo warranto proceeding in behalf of the State of Texas. On July 10, 1940, upon amended pleadings, after a hearing on the merits and after the court had overruled appellants' plea in abatement, the court rendered judgment decreeing the elections for the consolidation of the school districts and for the assumption of the bonded indebtedness invalid and void and decreed that the temporary injunction be made permanent. It is from such judgment that this appeal is prosecuted by the appellants, the above named county officials of Wheeler County.

The first contention of the appellants we wish to dispose of is that with reference to the capacity and authority of the appellees to prosecute this suit, the contention being that the attack upon the purported consolidation could only be maintained by the State in a quo warranto proceeding.

It will be noted above that the County Commissioners' Court of Wheeler County declared the results of the election by its order of May 13, 1940. This was after the issuance of the temporary restraining order of May 10, 1940, prohibiting the commissioners' court from issuing an order consolidating the two school districts. Section 5b of article 2742b provides that the commissioners' court of the county under whose jurisdiction the school districts lie shall canvass the returns of the election and declare the results and "when the results are so declared the consolidation of the districts shall thereby become effective". Under this provision, standing alone, the conclusion might follow that the proposed consolidated district would come into being by the declaration of the results of the election without the necessity of an additional order from such court declaring the districts consolidated. However, under article 2806, referred to in article 2742b for the manner to proceed in such elections as

these, the provision is made that the commissioners' court shall canvass the returns and "if the votes cast in each and all districts show a majority in each district voting separately in favor of such consolidation, the Court shall declare the school districts consolidated". This portion of the statute indicates that an order of consolidation is necessary before the proposed new district would come into being. If it was meant by the provisions quoted from article 2742b that no order was necessary to declare the districts consolidated and that only an order declaring the results of the election would automatically bring into existence the proposed consolidated district, then such provision is apparently in conflict with the quoted provision from article 2806 providing for the commissioners' court to declare the school districts consolidated. If, in this case, the new districts came into legal existence upon the declaration of the results of the election such district could not be collaterally attacked by a suit of this sort but might be attacked only by a quo warranto proceeding in behalf of the State. Lynn County School Board et al. v. Garlynn Common County Line School Dist. et al., Tex.Civ.App., 118 S.W.2d 1070, writ of error refused, and authorities therein cited. The ludicrous thing about the quoted provision above from section 5b is that the result of the voting at the election seems to be immaterial. Paraphrased, the provision is that after the votes are canvassed the commissioners' court shall declare the results and, regardless of the outcome of the election, "when the results are so declared the consolidation of the districts shall thereby become effective". Certainly the Legislature did not intend a literal construction to be placed upon this portion of the statute. Therefore, in view of the contrary provision set out in article 2806 requiring an order of consolidation we think the most reasonable construction of the provisions of both articles as construed together is that an order of consolidation was necessary after the declaration of the results of the election. This is especially true under the record before us because there is no intimation that the members of the commissioners' court intended to disobey the temporary restraining order of the trial court, which would necessarily have resulted if the effect of their action in declaring the results of the election automatically brought into legal existence the proposed consolidated district. We are therefore of the opinion under the facts of this case the consolidation has not become complete so as to prohibit a collateral attack of this sort upon the validity of the election.

As we view the merits of this case there is only one issue presented as to the legality of the two elections and that is whether or not it was necessary for the consent of the Commissioners' Court of Gray County to have been obtained in some manner before the districts herein involved might have been legally consolidated. The appellees assert that such consent was necessary because of the provisions of article 2744, R.C.S. of 1925, relative to county line school districts, wherein it is provided that such districts "shall not be changed or abolished except by the consent of the commissioners court of each county having territory contained therein, * * *". On the contrary the appellants contend that the provisions of section 5b of article 2742b control the situation here presented. In such article it is provided that "when the proposition is to consolidate districts having territory in two or more adjoining Counties, the petitions and election orders prescribed in Article 2806, Revised Statutes, 1925, shall be addressed to and issued by the County Judge of each County for and in behalf of each district wholly in his County or over which his County has jurisdiction for administrative purposes, and the County Commissioners' Court of each County shall canvass the returns of the election in each district lying wholly within the County or under its jurisdiction for administrative purposes, and declare the results, as in the case of the consolidation of districts lying wholly within one County; * * *". Upon examination it will be noted that article 2744 was an Act of the Legislature in 1911 while article 2742b was an Act of the 40th Legislature in 1927. By section 13 of the latter Act, known as House Bill No. 99, General and Special Laws of the 40th Legislature, it was provided that all "laws and parts of laws, General and Special, in conflict with this Act are hereby repealed". Therefore, if the above provisions of the two Acts are in conflict the 1927 Act must prevail as far as the procedure outlined for the consolidation is concerned. In the latter Act the sole requirement is that the qualified voters present their petition to the county judge in each county in behalf of each district wholly in his county or over which his county has jurisdiction whose sole duty it became to issue an order for the election as

prescribed in article 2806, and that after such election was held the commissioners' court of each county should canvass the returns of the election in each district lying wholly within such county or under its jurisdiction and declare the results. In this Act the consent of no one is required, not even the consent of the county judge issuing the election orders nor the commissioners' court or any other officials of his or any other county. The natural import of this provision is that the only consent necessary to the consolidation is that of the voters expressed in an election called for such purpose. The will of the voters being the paramount concern of the Legislature the manner of obtaining such expression is of little importance. In this instance, as applied to the facts of this case, in order to ascertain the will of the voters, instead of providing that the county judge of both counties should order the election and that the commissioners' courts of both counties should canvass the returns and declare the results, the Legislature saw fit to constitute the officials of the one county having jurisdiction of both school districts as those charged with this duty. Certainly such method was competent and effective to determine the will of the voters in the instant case and such will, we think, is the dominant factor in the matter of consolidation.

In support of our conclusion in this respect is the case of Woodson Independent School Dist. v. State ex rel. Cox et al., Tex. Civ.App., 130 S.W.2d 1038, writ of error dismissed, correct judgment. The facts of that case are squarely in point with those of the instant case. Woodson Independent School District lay wholly within Throckmorton County, Texas, and the County Line School District No. 4 lay partially in Throckmorton and partly in Stephens County. The county judge of Throckmorton ordered the election and the commissioners' court of such county canvassed and declared the results. The State of Texas, by a quo warranto proceeding, challenged the validity of the election asserting there existed no legal authority for the consolidation in the absence of some action by the county judge, commissioners and county board of school trustees of Stephens County, notice to none of which officials was given nor was their consent to such action in any way procured. The trial court rendered judgment declaring the attempted consolidation void. The Court of Civil Appeals at Eastland reversed the judgment of the trial court and rendered judgment

for the respondents who appealed the cause, thus, in effect, declaring the consolidation valid. The holding of the Court of Civil Appeals was based solely upon the theory that the procedure outlined in section 5b of article 2742b controlled the situation presented in that case. Such issue being the only one upon the merits before the Court of Civil Appeals, the fact that the Supreme Court of Texas, in dismissing the application for a writ of error in that case, approved the judgment rendered by the intermediate court, is authority enough for the conclusion that the procedure followed in that case, and in the instant case, is all that is necessary to consolidate such school districts.

In thus disposing of the above issue we are not unmindful of the case of Newsome, County Judge, et al. v. Elliott et al., Tex. Civ.App., 139 S.W.2d 221, in which an application for a writ of error was also dismissed by the Supreme Court "correct judgment". But unlike the Woodson Independent School District case, we think there was a theory in the Newsome case other than the one relied upon whereby the judgment of the Court of Civil Appeals might have been a correct one. In the latter case the Kinney Point Common School District No. 31 was wholly within Franklin County and under the jurisdiction of the Franklin County officials. The Talco Independent School District was partly in Franklin and partly in Titus County with its jurisdiction for administrative purposes in Titus County. Therefore, no one of the counties involved possessed jurisdiction over both schools, which is contrary to the facts of the instant case and of the facts in the Woodson Independent School District case. The required number of qualified voters of each of the school districts involved, apparently attempting to follow the procedure outlined in section 5b of article 2742b, presented their petitions for elections respectively to the county judges of Franklin and Titus Counties. The County Judge of Titus County issued his order calling an election but before the County Judge of Franklin County issued any order the County Board of School Trustees of Franklin County met and entered its order consolidating the Kinney Point District with Hagansport District No. 26, another common school district in Franklin County. Thereupon the County Judge of Franklin County refused to issue an election order. Suit was filed to compel him to issue the order and such relief was granted by the

trial court, which court also declared void the consolidation of the Kinney Point and Hagansport districts. The Court of Civil Appeals for the Sixth District reversed such judgment and remanded the cause upon the theory that the appellees therein had not shown that the commissioners' courts and county boards of school trustees of the respective counties had consented to the proposed consolidation of the Kinney Point and Talco districts. Such theory was predicated upon the above quoted provision from article 2744. However, if for any other reason not assigned the judgment of the Court of Civil Appeals was correct the Supreme Court was authorized to dismiss the application for the writ of error with the notation "correct judgment". Without attempting to assume an intuitional role as to the reasons prompting the Supreme Court in approving the judgment of the intermediate court in such case, suffice it to say that it is entirely possible the Supreme Court was of the opinion the order of the county board of school trustees consolidating the Kinney Point and Hagansport districts was a valid order, which, if true, changed the original status of the Kinney Point district and thus deprived the County Judge of Franklin County of his authority to issue an election order to consolidate the Talco district with the Kinney Point district. State ex rel. George et al. v. Baker et al., 120 Tex. 307, 40 S.W.2d 41; Lynn County School Board et al. v. Garlynn Common County Line School Dist. et al., supra; articles 2922a and 2922c, Vernon's Annotated Civil Statutes. At any rate, if the action of the Supreme Court in approving the judgment of intermediate court in the Woodson Independent School District case may not be harmonized with its similar approval in the Newsome case, we prefer to follow the decision in the former case because its facts are clearly in point with the facts of the instant case.

We are therefore of the opinion that the election for consolidation and the election for the bond assumption were valid elections and that the trial court erred in holding the same invalid and in issuing the injunction herein prohibiting the County Commissioners' Court of Wheeler County from issuing orders with reference to the two elections. Stephens et al. v. Coffee, County Atty., et al., Tex.Civ.App., 133 S.W.2d 184.

The judgment of the trial court is reversed and judgment is here rendered dissolving the injunction and decreeing the elections valid.

Reversed and rendered.

## On Motion for Rehearing.

■ In our original opinion upholding the validity of the two elections herein we impliedly overruled the contention of the appellees in their original brief in regard to the unconstitutionality of the law under which the consolidation of the two schools was effected. In a motion for rehearing the appellees vigorously attack the constitutionality of that portion of section 5b of article 2742b relative to the consolidation of a common county line school district with a contiguous independent school district, asserting that such provision involves a subject not expressed in the title to the 1927 Act of the 40th Legislature and is therefore within the prohibition of section 35 of article 3 of the Constitution of Texas, Vernon's Ann.St.

The title of the 1927 Act (Acts 1927, 40th Leg., 1st C.S., p. 228, ch. 84) is in part as follows: "An Act to provide for increasing or diminishing the area of an Independent School District upon petition of qualified resident property taxpaying voters; * * * providing for increasing or diminishing the area of Common School Districts or abolishing Common School Districts by the County Board upon a vote of a majority of the qualified voters in the district affected; * * * providing for the establishment or consolidation of County Line School Districts".

The appellees assert that the above title would not warrant the enactment of the provision relative to the consolidation of a common county line district with a contiguous independent district but would only warrant a provision consolidating one county line district with another county line district.

We are not in accord with the appellees' contention in this respect. Under the liberal construction placed upon the above constitutional provision by our courts we are of the opinion the title of this Act was sufficient to support the enactment in the body of the bill relative to the consolidation of a county line district with a contiguous independent district. In speaking of the purposes of this constitutional provision the Commission of Appeals in Consolidated Underwriters v. Kirby Lumber Co., 267 S.W. 703, 705, said:

"It is well recognized that the purposes of this provision are to advise the Legislature and the people of the nature of each particular bill, so as to prevent the insertion of obnoxious clauses which otherwise might be ingrafted on it and become the law, and to obviate legislation through the combination, upon a composite bill, of the votes of the proponents of different measures included in it, some of which would not pass upon their merits if separately considered. Stone v. Brown, 54 Tex. [330] 342."

In this connection it was held in the foregoing Kirby Lumber Company case that the title is sufficient if the general and ultimate subject of the particular act as a whole is found in the wording of the title, and the subject so expressed will support provisions in the body of the act that are component parts of the general subject, reasonably implied or auxiliary to it, relevant, germane, complementary, necessary or reasonably incidental.

In Doeppenschmidt v. International & G. N. R. Co., 100 Tex. 532, 101 S.W. 1080, 1081, the Supreme Court of Texas, speaking through Chief Justice Gaines, said: "It would be burdensome if not intolerable to require that the title should be as full as the act itself. The word 'title' implies that no such requirement exists. The purpose of the constitutional provision is merely to reasonably apprise the legislators of the contents of the bill, to the end that surprise and fraud in legislation may be prevented."

It has also been held that it "is legitimate in the construction of a law to refer to the caption for explanation * * *, and it is equally permissible in the construction of the caption to refer to the body of the act * * *." City of Austin et al. v. McCall, 95 Tex. 565, 68 S.W. 791, 793.

We therefore conclude that the title to this Act was sufficient to give "fair indication and reasonable notice" to the legislators that the body of the bill included the provision under attack and thus prevented "the mischiefs against which the Constitution seeks to guard". 30 Tex.Jur. 92, § 43; Austin Independent School Dist. et al. v. Marrs, Superintendent, et al., 121 Tex. 72, 41 S.W.2d 9; City of Aransas Pass et al. v. Keeling, Atty. Gen., 112 Tex. 339, 247 S.W. 818; Breen v. Texas & P. R. Co., 44 Tex. 302; Pyote Independent School Dist. v. Dyer, Tax Collector, Tex.Com.App., 24 S.W.2d 37; Id., Tex.Com.App., 34 S.W.2d 578; Lowery, Tax Collector, v. Red Cab Co., Tex.Civ.App., 262 S.W. 147, writ of error refused; Pleasant Valley Common School Dist. No. 7 et al. v. Story, County Judge, et al., Tex.Civ.App., 142 S.W.2d 258, writ of error refused.

The motion for rehearing is overruled.